**HARRIS COUNTY APPRAISAL DISTRICT and Harris County Appraisal Review Board, Appellants,**

v.

**John HERRIN, The Enterprise Company, Ltd., and The Enterprise Company, Appellees.**

No. 14–94–00408–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 25, 1996.

Rehearing Overruled March 14, 1996.

———

G. Todd Stewart, Houston, for appellants.

William B. Emmons, Houston, for appellees.

Before YATES, FOWLER, and JUNELL *, JJ.

---

* The Honorable William E. Junell sitting by as-   signment.

## OPINION ON REHEARING

FOWLER, Justice.

This is an ad valorem property tax case involving section 42.08 of the Tax Code. The primary issue on appeal is whether section 42.08 is unconstitutional because it requires a taxpayer to pay disputed property taxes or else forfeit the right to have a court review the amount of taxes assessed. Although the taxpayers in this case did not pay their taxes as required by statute, the trial court refused to dismiss the case as the Harris County Appraisal District and the Harris County Appraisal Review Board (collectively "Harris County") requested, and entered a judgment for the taxpayers. We affirm the trial court's judgment because we find that, as applied to appellees, section 42.08 creates an unreasonable barrier to access to the courts in violation of the open courts provision of the Texas Constitution.

## FACTS AND PROCEDURAL HISTORY

The parties stipulated to the facts of this case. For the 1992 tax year Harris County Appraisal District appraised nine parcels of property owned by Joe Herrin, The Enterprise Company, Ltd. and The Enterprise Company (collectively "appellees"). Appellees filed a protest with the Harris County Appraisal Review Board arguing that the District's property valuations were too high. *See* Tex.Tax Code Ann. § 41.44(a) (Vernon 1992). The Board lowered the appraised value on the properties, but the values were still not as low as appellees claimed they should have been. Pursuant to Chapter 42 of the Texas Property Code, appellees filed suit in late 1992 for de novo review in the district court. *See* Tex.Tax Code Ann. § 42.21 (Vernon 1992).

At some point, the parties began settlement negotiations. In the meantime, the taxes on the properties became delinquent February 1, 1993, however, appellees failed to pay any taxes due at this time. *See* Tex.Tax Code Ann. § 31.02(a) (Vernon 1992).

Sometime in the spring, the parties negotiated a settlement agreement in which they agreed to a fair market value for all nine properties of $819,410.00, a reduction of almost 60% from the original valuation of $2,138,130.00. In May of 1993, the parties announced in open court that they had settled, but for some reason, a judgment was not entered at this time. In June of 1993, appellees paid their taxes based on the valuations agreed to in the settlement agreement.

A final judgment still had not been signed or requested in November of 1993, when Harris County moved for summary judgment, asking that the suit be dismissed for want of jurisdiction because appellees had not paid the taxes owing on the original valuation by the February 1, 1993 delinquency date. The trial court denied this motion. Several months later the case was tried to the court on agreed facts. The parties included the above facts as well as some additional facts not relevant to this opinion in the stipulated facts submitted to the court.

The trial court rendered judgment for appellees, finding the value of eight of the nine properties to be the amount set forth in the settlement agreement. The judgment did not state a value for the ninth property. Based on the record before us, it appears that the ninth property was disposed of by a "Mother Hubbard clause" contained in the judgment which denied all requested relief not granted.[1] Harris County appealed.

## RELEVANT TAX CODE PROVISIONS

This suit involves Chapter 42 of the Texas Tax Code, which provides in pertinent part:

> A property owner who appeals as provided by this chapter *must pay taxes* on the property subject to the appeal in the amount required by this subsection *before the delinquency date or the property owner forfeits the right to proceed to a final determination of the appeal.*

Tex.Tax Code Ann. § 42.08(b) (Vernon 1992) (emphasis added). The amount a property owner must pay before the delinquency date is either (1) the undisputed portion of the

---

1. The disposition of the ninth property is not

before us as the subject of a point of error.

taxes or the amount he paid the previous year, whichever is greater; or (2) the amount of taxes due on the appealed order. § 42.08(b)(1), (2). If a party requests a hearing on the issue of compliance with subsection (b), then the court *must* determine whether the party substantially complied with the subsection, and if the party did not substantially comply, the court *shall* dismiss the appeal. § 42.08(d) (emphasis added).

## LEGAL AND CONSTITUTIONAL BACKGROUND

In its only point of error, Harris County claims the trial court erred in entering judgment for appellees because appellees did not pay the taxes by the due date, as required by section 42.08(b), and thus, their appeal should have been dismissed. In response appellees argue that (1) Harris County waived this point of error and (2) appellees substantially complied with section 42.08. Finally, in the event this court finds no waiver and no substantial compliance, appellees request us to hold section 42.08 unconstitutional because it violates article I, section 13 of the Texas Constitution, commonly referred to as the open courts provision.

As an initial matter, we decline to find that Harris County waived its point of error. Not only did it file a motion for summary judgment requesting dismissal, but the agreed facts presented to the court contained the facts necessary for the court to dismiss the case based on the caselaw outstanding at the time of judgment.

With regard to Harris County's point that the suit should have been dismissed, we find two lines of cases construing the dismissal provision of section 42.08. The first involves an appealing party who paid a portion of the taxes due before the due date. *See Harris County Appraisal Dist. v. Krupp Realty Ltd. Partnership*, 787 S.W.2d 513 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Missouri Pac. R.R. Co. v. Dallas County Appraisal Dist.*, 732 S.W.2d 717 (Tex.App.—Dallas 1987, no writ). In each of these cases, the trial court made a fact determination as to whether the taxpayer substantially complied with section 42.08(b). *Harris County Appraisal Dist. v. Bradford Realty, Ltd.*, 919 S.W.2d 131, 135 [motion to publish granted], (Tex.App.—Houston [14th Dist.] 1994, no writ).

In the second line of cases, the appealing party paid no portion of the taxes by the due date, the precise situation presented to this court. The courts addressing this fact scenario have consistently held that if a party pays no taxes *by the delinquency date,* the appeal should be dismissed for want of jurisdiction. *See Harris County Appraisal Dist. v. Dipaola Realty Assoc.*, 841 S.W.2d 487, 490 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Filmstrips & Slides, Inc. v. Dallas Cent. Appraisal Dist.*, 806 S.W.2d 289, 291 (Tex.App.—Dallas 1991, no writ); *Ferguson v. Chillicothe Indep. Sch. Dist.*, 798 S.W.2d 395, 398 (Tex.App.—Amarillo 1990, writ denied); *Harris County Appraisal Dist. v. Consolidated Capital Properties IV*, 795 S.W.2d 39, 41 (Tex.App.—Amarillo 1990, writ denied) (all holding that if the taxpayer fails to follow the statutorily mandated payment procedure, the right to appeal is forfeited under section 42.08).

Clearly, under a plain reading of both the statute itself and a long line of cases, payment before the delinquency date of some or all of the taxes is a "jurisdictional prerequisite" to the district court's subject matter jurisdiction over the appeal of an appraisal district or board's determination. TEX.TAX CODE ANN. § 42.08; *Lawler v. Tarrant Appraisal Dist.*, 855 S.W.2d 269, 271 (Tex. App.—Fort Worth 1993, no writ). However, in light of three Texas Supreme Court opinions handed down within the last two years discussing the open courts provision of the Texas Constitution and the guarantees it provides to litigants, the conclusion reached in the case law is invalid, at least as to some taxpayers. *See Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440 (Tex.1993); *State v. Flag–Redfern Oil Co.*, 852 S.W.2d 480 (Tex.1993); and *R Communications v. Sharp*, 875 S.W.2d 314 (Tex. 1994).

The open courts provision states the following:

All courts shall be open, and every person for an injury done him, in his lands, goods,

person, or reputation, shall have remedy by due course of law.

Tex. Const. art. I, § 13.

As our Supreme Court recently stated,

Historically, we have recognized at least three separate constitutional guarantees emanating from our open courts provision. First, courts must actually be open and operating, so that, for example, the legislature must place every county within a judicial district. Second, citizens must have access to those courts unimpeded by unreasonable financial barriers, so that the legislature cannot impose a litigation tax in the form of increased filing fees to enhance the state's general revenue. Finally, meaningful legal remedies must be afforded to our citizens, so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress. [citations omitted]

*Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440, 448 (Tex. 1993).

This appeal implicates the second constitutional guarantee—access to the courts—because this case involves a financial barrier that must be met before a taxpayer can have access to the courts. The issue is whether this financial barrier is unreasonable. What constitutes an unreasonable financial barrier is not a new issue. In 1890 the Supreme Court held unconstitutional a statute requiring a supersedeas bond as a condition of appeal. *Dillingham v. Putnam,* 109 Tex. 1, 14 S.W. 303 (1890). Much more recently, the court invalidated an increased filing fee because part of the fee was dedicated to state general revenues rather than to the judiciary. *LeCroy v. Hanlon,* 713 S.W.2d 335 (Tex. 1986). In explaining this conclusion, the court noted that filing fees and court costs to be paid by those capable of paying usually are constitutional because they are a reasonable fee for judicial support services. Since the increased filing fee was unrelated to the

costs generated by the suit, the fee was unconstitutional. *Id.* at 342.

Thus, the precise question we must answer in this appeal is "whether the prepayment requirement is an unreasonable financial barrier to access to the courts in light of the state interest involved." *Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d at 449. The trio of opinions issued recently by the Supreme Court give us guidance on how to answer this question.

## THE TRILOGY OF SUPREME COURT CASES

The first of the three opinions was *Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440 (Tex.1993). This case involved a suit by the Association on behalf of its members against the Texas Air Control Board for penalties the Board assessed against its members for violations of state air and water regulations. The Association alleged the regulations were unconstitutional. The purpose of the regulatory statutes was an important one: to protect our State's natural resources. *Id.* The court concluded that the statutes imposed a financial barrier to the courts because they contained a prepayment provision consisting of two elements: (1) the assessed penalty must be paid, or financial security provided, within 30 days, and enforcement would not be stayed pending judicial review, and (2) if the payment were not made or the financial security not provided within the 30 day period, the right to judicial review would be forfeited. The court held that this twofold financial barrier was unreasonable. It concluded that the State could have obtained its goal of having the penalties be a deterrent by imposing only the first element, the prepayment provision, without imposing the second element, the forfeiture provision. The forfeiture provision did not serve any additional interest.[2] *Id.* at 450. Since the State could further its interests by the prepayment provision alone, the forfeiture provision was an unreasonable barrier on a party's right to access the courts.

---

**2.** In reaching this conclusion, the court also noted that imposing the prepayment provision alone would have made the statute's elements like a

normal appeal and thus would not have implicated the open courts provision.

The second opinion in the trio is *State v. Flag–Redfern Oil Co.*, 852 S.W.2d 480 (Tex. 1993). *Flag–Redfern* involved several provisions in the Natural Resources Code authorizing the State to assess and collect extra royalties from lessees of state oil leases when the State determined that too little had been paid. Tex.Nat.Res.Code §§ 52.135, 52.137. The objectionable provisions set out the procedure lessees must follow to protest a deficiency assessment. When the State assessed a deficiency, the lessee could challenge the assessment by submitting a written protest within 30 days to the Commissioner of the General land office. If a lessee chose to forego a hearing before the Commissioner or was dissatisfied with the Commissioner's order after a hearing, the lessee must pay the deficiency under protest within 30 days. If the lessee did not pay the deficiency, the lessee could not obtain judicial review of the assessment. Tex.Nat.Res.Code § 52.173(a). The lessee then had 90 days to bring suit in Travis County to recover payment. Tex.Nat. Res.Code § 52.137(c). In addition, if a lessee chose to forego the hearing before the Commissioner, the lessee risked forfeiture of his rights under the lease. Tex.Nat.Res. Code § 52.176.

The financial barrier at issue was the prepayment requirement.[3] As it did in *Texas Association of Business* when it considered the reasonableness of the barrier, the court looked to the purpose of the barrier. The purpose was a financial one, namely, to give the State immediate access to disputed royalty payments. *Flag–Redfern Oil Co.*, 852 S.W.2d at 485. Again, as in *Texas Association of Business*, the Court noted that the State could meet its needs through the other provisions of the statute without conditioning judicial relief on prepayment of the disputed sums. Therefore, it concluded that the prepayment requirement violated the open courts provision. *Id.* at 485–486.

*R Communications, Inc. v. Sharp*, 875 S.W.2d 314 (Tex.1994) is the last of the three opinions the Supreme Court issued recently on the subject of financial barriers that impede access to the courts. R Communications sued the State comptroller contesting an assessment for additional sales taxes the Comptroller's office imposed as a result of an audit of R Communications' records. R Communications also alleged that four sales tax provisions of the tax code violated its rights under the Texas and United States Constitutions: sections 111.022, 112.051, 112.101, 112.108. Section 112.108 denied the taxpayer any form of declaratory relief, section 112.051 conditioned the right to file suit attacking the tax's validity or its assessment on prior payment of taxes; section 112.101 precluded injunctive relief without prior payment of the taxes or without posting of a bond equal to twice the amount of the estimated tax liability; and section 111.022 authorized summary collection procedures in certain circumstances without requiring the State to file suit.

As in *Texas Association of Business*, in determining whether the provisions violated the open courts provision, the court considered both the purpose of the provisions as well as whether less restrictive alternatives were available to the State to achieve its purpose. The purpose of the provisions was to enable the State to have quick access to the funds and to avoid the anticipated delays in payment if taxpayers were not required to pay immediately. The court found that less restrictive alternatives did exist. First, the court noted that section 112.108 was recently enacted, and prior to its enactment, taxpayers had been able to obtain prompt, unimpeded declaratory judgments of no tax liability without regard to whether they had satisfied the prepayment provisions of section 112.051. The State could allow declaratory relief again. The court also noted that the State could provide for accelerated administrative proceedings and expedited court proceedings, which it currently did not give to taxpayers. For example, although R

---

**3.** Although the court referred to the barrier as a "prepayment requirement," the prepayment requirement appears to have had a twofold aspect just as the provision in *Texas Association of Business* did—a prepayment element and a forfeiture element. However, the court did not separate the two elements like it did in *Texas Association of Business* and hold that only the forfeiture element was unconstitutional. Instead, it appeared to invalidate both the prepayment and forfeiture elements of the provision.

Communications invoked the administrative review process immediately after the State made a determination of liability, the Comptroller did not hold a hearing for three years and did not issue a final decision until two years after the hearing.

After considering these less drastic alternatives, the court stated,

> "The combination of the prepayment provisions contained in sections 112.051 and 112.101, the ban on declaratory judgments in section 112.108, and the inadequacy of the remedy of awaiting the filing of a collection suit by the Comptroller mean that a taxpayer is financially restricted in its ability to get to court."

*R Communications v. Sharp*, 875 S.W.2d at 317–318. It also declared section 112.108, the provision prohibiting the taxpayer from obtaining declaratory relief, unconstitutional and void. *Id.* at 318. More importantly for our purposes, the court stated, "We do not mandate an unconditional right to declaratory relief, *but only direct that some constitutionally adequate means of judicial review not dependent on prior payment be provided.*" (emphasis added) *Id.* at 318, n. 8. If a taxpayer were able to obtain judicial review through a declaratory judgment action, without regard to whether taxes had been paid, a taxpayer would have the constitutionally adequate means of judicial review referred to in the opinion.

### THE CONSTITUTIONALITY OF SECTION 42.08

■ Having reviewed the most recent Supreme Court pronouncements on the open courts provision and how a court should apply the requirements of the open courts provision to statutory provisions alleged to be unconstitutional, we now return to section 42.08. Section 42.08 clearly creates a financial barrier to access to the courts by requiring that a taxpayer pay the appropriate amount of taxes owing under section 42.08(b)(1) or (2) before the delinquency date or forfeit the right to obtain a final determi-

nation from the reviewing court.[4] The barrier consists of two elements just like the barrier in the provision at issue in *Texas Association of Business*—a prepayment element and a forfeiture element. Moreover, just as in each of the three Supreme Court cases discussed above, the amount Harris County claimed appellees should have paid by the delinquency date included disputed amounts.

■ The question before us is whether the financial barrier 42.08 imposes is reasonable as applied to appellees in light of the statute's purpose, and the answer to this question turns on whether less drastic alternatives are available to fulfill the statute's purpose. According to Harris County, the prepayment and forfeiture elements are needed to ensure that Harris County receives the taxes because ad-valorem taxes "are the basic funding source for local governments, schools, etc." Although Harris County frames the purpose a little differently than the agencies involved in the three Supreme Court cases, the purpose obviously is the same—to obtain prompt access to the funds. The same fear expressed in *R Communications* obviously is at play here—no one will pay their taxes on time without the forfeiture provision.

This reason was not enough to validate the barriers in the Supreme Court cases discussed above. For example, in *Texas Association of Business* the court found that the prepayment element by itself—without the forfeiture element—was a less drastic alternative that would not implicate the open courts provision. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d at 449. Likewise, in *R Communications* the court upheld the two prepayment provisions (both of which conditioned judicial review on prepayment) but struck down the provision which abolished the taxpayer's right to obtain declaratory relief without regard to pre-

---

4. 42.08 is slightly different from the provisions discussed in the trio of Supreme Court cases in that a taxpayer may be able to get before a court *without having paid taxes.* This is a distinction without a difference, however, because, if the taxes, or a substantial portion of the taxes, are not paid before the delinquency date, the trial court is to dismiss the lawsuit. TEX.CODE ANN. § 42.08.

payment of taxes.[5]  *R Communications, Inc. v. Sharp,* 875 S.W.2d at 318.

Less drastic alternatives also were available to Harris County in this case.  First, the State could have achieved its goal by requiring prepayment without forfeiture.  Appellees paid their taxes promptly once an agreement was reached.  Both parties apparently recognized that the assessments were too high, they entered into negotiations, and once they reached an agreement, appellees promptly paid.  The forfeiture provision seemed to have no impact on the decision to pay and thus served no purpose.  In addition, the statute already contains less drastic alternatives.  As appellees point out, stiff penalties and interest are imposed on taxpayers who do not pay their taxes by the delinquency date.  *See* TEX.TAX CODE ANN. § 33.01.  A taxpayer thus has great incentive to make a timely payment, as borne out by appellees' own prompt payment after the settlement agreement.

In sum, *Texas Association of Business, Flag–Redfern,* and *R Communications* reflect a persistence on the part of the Supreme Court to void provisions that condition judicial relief on prepayment of sums the taxpayer claims not to owe.  For appellees to have complied with 42.08 and obtain a final hearing in court, they would had to have paid taxes they claimed not to owe.  Thus, the forfeiture element of the statute is unconstitutional as applied to them.

Harris County alleges that 42.08 is different from the provisions in the cases discussed above because sometimes taxpayers can meet the requirements of 42.08(b)(1) and obtain judicial relief without having to pay amounts that are in dispute.  *See* TEX.TAX CODE ANN. 42.08(b)(1) (requiring the taxpayer to pay either the amount of tax assessed the prior year or the amount of tax not in dispute for the current year, whichever is greater, and providing for judicial review if the taxpayer substantially complies with § 42.08(b)).  However, this case does not present that situation—appellees had to pay disputed amounts—and we decline to opine whether conditioning judicial review on payment of only undisputed amounts is constitutional.[6]

In conclusion, we hold only that the forfeiture element of section 42.08(b) is unconstitutional *as applied to appellees* because it required them to pay disputed amounts before being able to obtain judicial relief.

Harris County's point of error number one is overruled and we affirm the judgment of the trial court.

---

5. Declaratory relief was not available to appellees, whose suit contesting the amount of taxes they allegedly owed did not fall within the subject matter of declaratory judgments.  *See* TEX. CIV.PRAC. & REM.CODE ANN. § 37.004.

6. One court of appeals has held the forfeiture provision unconstitutional on its face.  *W.V. Grant Evangelistic Association, Inc. v. Dallas Central Appraisal District,* 900 S.W.2d 789, 792 (Tex.App.—Dallas 1995), writ granted.